IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-96-RJ

| | | |
|---|---|---|
| PAULA GUFFEY QUATE, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-20, DE-25] pursuant to Fed. R. Civ. P. 12(c). Claimant Paula Guffey Quate ("Claimant"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner for further proceedings consistent with this Order.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on March 5, 2010, alleging disability beginning February 15, 2010. (R. 908–83). Her claim was denied initially and upon reconsideration. (R. 66–93, 96–103). A hearing before Administrative Law

1

Judge ("ALJ") Augustus C. Martin was held on November 17, 2011, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 32–65). On December 9, 2011, ALJ Martin issued a decision denying Claimant's request for benefits. (R. 14–31). On February 14, 2012, the Appeals Council ("AC") denied Claimant's request for review. (R. 1–5). On April 13, 2012, Claimant filed an action in this court, and on June 5, 2013, the court allowed Claimant's motion for judgment on the pleadings, remanding the case to the Commissioner for the further proceedings because the ALJ failed to adequately evaluate the opinion of Erin Williamson, a nurse practitioner, and for consideration of new and material evidence. (R. 858–63); *Quate v. Colvin*, No. 7:12-CV-92-BO ("*Quate I*") (E.D.N.C. June 5, 2013) (Boyle, J.).

On January 27, 2015, ALJ Carl B. Watson held a second hearing, at which Claimant, represented by counsel, and a VE appeared and testified. (R. 803–39). On March 20, 2015, ALJ Watson issued an unfavorable decision. (R. 781–802). On August 28, 2015, the AC incorporated new evidence into the record and then issued additional findings and analysis, determining that Claimant's arguments did not provide a basis for disturbing the ALJ's decision. (R. 497–504). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by

substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step,

3

the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges that the ALJ erred in the RFC formulation by improperly evaluating the medical opinion evidence and Claimant's credibility, and in determining that Claimant could perform her past relevant work. Pl.'s Mem. [DE-21] at 7–13.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act prior to her date last insured of December 31, 2013. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 786). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease to the cervical and lumbar spine, hepatitis C, asthma, obesity, residuals from right rotator cuff tear and partial right biceps tears, and early degenerative joint disease to the right shoulder. *Id.* The ALJ also found Claimant had the following non-severe impairments: gastroenteritis, a history of carpal tunnel syndrome, vision problems, dermatitis, acute renal failure resolved, and depression. *Id.* However, at step three, the ALJ concluded these

4

impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 787–88). Applying the technique prescribed by the regulations, the ALJ found that Claimant's depression has resulted in no limitations in her activities of daily living, social functioning, and concentration, persistence, or pace with no episodes of decompensation. (R. 787).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations: she cannot climb ladders, ropes, or scaffolds; cannot reach overhead with either arm; must avoid concentrated exposure to smoke, fumes, odors, dust, gases, and poor ventilation; and must avoid working at unprotected heights. (R. 788). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 791–92). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as a graphic designer, desktop publisher, and receptionist as those jobs are generally performed. (R. 793).

## V. DISCUSSION

### A.     The RFC Determination

Claimant argues that the ALJ erred in the RFC determination by improperly weighing the medical opinion evidence and Claimant's credibility. Pl.'s Mem. [DE-21] at 7–13. The Commissioner argues that substantial evidence supports the ALJ's RFC determination. Def.'s Mem. [DE-26] at 6–12.

An individual's RFC is the capacity an individual possesses despite the limitations caused

---

1 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

1.   **Medical Opinion Evidence**

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

6

inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996).[2] An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

### i. *Dr. Huffmon's Opinion*

Claimant argues that the ALJ failed to appropriately consider the opinion of Dr. Huffmon, Claimant's treating neurosurgeon. Pl.'s Mem. [DE-21] at 9–10. In response, the Commissioner contends that substantial evidence supports the AC's consideration of Dr. Huffmon's opinion. Def.'s Mem. [DE-26] at 6–9.

On March 13, 2015, Dr. Huffmon wrote a letter stating as follows:

---

2 Rulings 96-2p and 96-6p were rescinded, effective March 27, 2017, and therefore still apply to this claim. 82 Fed. Reg. 15263-01 & 15263-02 (Mar. 27, 2017).

7

> [Claimant] is a 60-year old female I have been seeing for quite some time. She has had multiple surgeries on her neck from both the front and the back. She has had fusions from both the front and the back. She currently has severe stenosis at C7-T1 which is below the level of where she previously had surgery. She needs to have surgery there. She also needs to have revision of her fusion at C5-6 due to pseudoarthrosis. She will likely need surgery at C4-5 as well. I have explained to her that there is a good chance we may have to revise her posteriorly.
>
> She also has degenerative disc disease at L2-3, L3-4 and L4-5. Severe at L3-4 and L4-5. Multilevel lumbar spondylosis.
>
> [Claimant] suffers from severe degenerative changes in her neck and low back. She is going to require a very extensive surgery on her neck. She has already had very extensive surgery on her neck. She is not capable of performing tasks of significance at this point. Certainly cannot perform her job as a graphic designer because of needing to work on the computer or graft board extensively. Due to her neck she would be unable to do this. Due to her arm symptoms she would be unable to do this. She is certainly disabled for now, from at least 2012 if not before that. And this will continue into the foreseeable future. Even if she should have successful outcome from her surgery, I am not sure that she would be able to reenter the work force.

(R. 1615). Dr. Huffmon's letter was not in the record at the time of the ALJ's decision, but the AC incorporated it into the record and responded to Claimant's argument regarding Dr. Huffmon's opinion as follows:

> You contend the [ALJ] did not adequately consider the treating source opinion of George Huffmon, M.D., contained in a letter dated March 13, 2015. The [AC] notes that this letter was received on March 20, 20125, the day the hearing decision was issued. The [AC] has now considered whether the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record. We found that this information does not provide a basis for changing the [ALJ's] decision. Specifically, Dr. Huffman's [sic] letter primarily focuses on the claimant's current condition, which is after the claimant's date last insured. Additionally, Dr. Huffman [sic] does not specify the claimant's functional limitations, but states generally that the claimant is "certainly disabled for now, from at least 2012 if not before that," which is an issue reserved to the Commissioner (Social Security Ruling 96-5p).

(R. 497).

Claimant argues that Dr. Huffmon's letter relates to her functioning during the period in

8

question, despite the fact that it was written after her date last insured. Pl.'s Mem. [DE-21] at 10. The Commissioner counters that the evidence discussed by the ALJ explains why Claimant was not disabled as of December 31, 2013, even though her condition may have worsened by 2015 when Dr. Huffmon authored the opinion. Def.'s Mem. [DE-26] at 6–7. The Commissioner acknowledges that the AC found that Dr. Huffmon did not give an opinion relating to the relevant time period, and states that the discussion as to Claimant's worsening condition "is only for the purposes of supporting the AC's point that Dr. Huffmon's lack of a rationale for the period under review is significant." *Id.* at 7 n.4. The Commissioner's argument as to this point is without merit, where the court must review the grounds supplied by the ALJ and the AC in the first instance. *See Hornal v. Berryhill*, No. 7:15-CV-00266-F, 2017 WL 634697, at *4 (E.D.N.C. Feb. 16, 2017) ("[A] reviewing court must judge the propriety of [agency] action solely by the grounds invoked by the agency," and "[i]f those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it deems a more adequate or proper basis.") (internal quotation marks and citations omitted).

Here, the AC considered Dr. Huffmon's opinion and incorporated it into the record. (R. 497, 503). When the AC "specifically incorporate[s] [evidence] in to the record, the remaining task for the court is to 'review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Gentry v. Colvin*, No. 2:13-CV-66-FL, 2015 WL 1456131, at *3 (E.D.N.C. Mar. 30, 2015) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991), *superseded on other grounds by* 20 C.F.R. § 404.1527). In support of its conclusion that Dr. Huffmon's opinion did not provide a basis for changing the ALJ's decision, the AC offered two justifications: (1) the opinion primarily focused on Claimant's current condition and not the period prior to her date

9

last insured, and (2) Dr. Huffmon's opinion is on the ultimate issue of disability, an issue reserved to the Commissioner. (R. 497).

As an initial matter, the AC is correct that Dr. Huffmon's statement about Claimant being disabled and unable to work is an opinion on an issue reserved to the Commissioner and therefore is not entitled to special weight. *See* 20 C.F.R. § 404.1527(d) (explaining that opinions on issues reserved to the Commissioner, such as whether a claimant is disabled, are not entitled to special significance). Even so, Ruling 96-5p explains that while "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance," they must "never be ignored." S.S.R. 96-5p, 1996 WL 374183, at *2–3 (July 2, 1996).[3] "If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* Here, the AC also determined that Dr. Huffmon's opinion did not relate to the time period at issue. (R. 497). However, Dr. Huffmon explicitly states that his opinion extended to the time period prior to Claimant's date last insured. *See* (R. 1615) ("She is certainly disabled for now, from at least 2012 if not before that."). Where this is the only justification offered in support of the AC's determination that Dr. Huffmon's opinion did not impact the ALJ's decision that Claimant was not disabled prior to her date last insured, this cannot constitute substantial evidence in support of the agency action. *Compare Alston v. Berryhill*, No. 5:16-CV-792-D, 2017 WL 4106242, at *6–7 (E.D.N.C. Aug. 31, 2017) (holding there was no error in the ALJ's consideration of a treating source opinion on the ultimate issue of disability where the ALJ discounted the opinion because it was not supported by the record, an appropriate consideration under the regulations), *adopted by* 2017

---

[3] Ruling 96-5p was rescinded, effective March 27, 2017, and therefore still applies to this claim. 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

WL 4102475 (Sept. 15, 2017). Accordingly, where the AC's proffered reason for discounting Dr. Huffmon's opinion aside from the fact that it addressed the ultimate issue of disability is flawed, the AC erred in considering Dr. Huffmon's opinion, and the case must be remanded for further consideration.

### ii. Stephen Carpenter's Opinion

Claimant contends that the ALJ did not properly evaluate the opinion of Stephen Carpenter ("Carpenter"), a rehabilitation counselor. Pl.'s Mem. [DE-21] at 10–12. The Commissioner responds that substantial evidence supports the agency's consideration of Carpenter's opinion. Def.'s Mem. [DE-26] at 9–10.

The ALJ discussed Carpenter's opinion as follows:

> Mr. Carpenter noted that testing was hampered by fatigue and pain causing deficits in memory, concentration, and attention. He concluded that the claimant was unable to engage in competitive work on a sustained basis due to marked functional capacity loss secondary to multiple medical problems. He noted that the claimant showed poor ability to sustain physical function for any type of work activity at any exertional level on a full time basis. This opinion is also given little weight. [Mr.] Carpenter is not an acceptable medical source, nor is he an impartial examiner, as he was hired by the claimant's representative. His findings that chronic fatigue severely affects the claimant's ability to function [are] not supported by the medical evidence or by the report of the claimant's activities of daily living as set forth above. Furthermore, his findings regarding showing significant deficits in memory, concentration, and attention are not supported by the evidence. The claimant has self-reported activities of reading, watching television, playing games, driving, and managing finances (Exhibit 3E) are [sic] inconsistent with the restricted level of functioning indicated by Mr. Carpenter.

(R. 793). The AC further commented on Carpenter's opinion, stating:

> In giving this opinion "little weight," the [ALJ] noted that Mr. Carpenter was not a medical source as defined by our rules. However, the [ALJ] primarily relied on the fact that Mr. Carpenter's findings are not consistent with the record as a whole (Social Security [Ruling] 06-03p). Specifically, Mr. Carpenter indicated the claimant had significant deficits in memory, concentration and attention and exhibited rapid fatigue. However, this is inconsistent with the claimant's self-reported activities of daily living (Exhibit 3E). Additionally, in treatment notes,

11

the claimant was generally observed with normal attention span, no cognitive difficulties, she was oriented to time, place and person, and she could follow commands and had a good fund of knowledge (Exhibits 27F, 28F, 31F, and 41F). She has also denied psychiatric symptoms on multiple occasions, and she was generally observed to be well nourished and in no acute distress (Exhibits 38F, page 4, 31F, and 27F). Accordingly, the [AC] finds that the [ALJ's] evaluation of Mr. Carpenter's opinion is sufficient and supported by substantial evidence in the record.

(R. 497–98).

Both the ALJ and the AC failed, however, to present the full picture of the evaluation performed by Carpenter, who authored an opinion after reviewing Claimant's medical records and performing vocational evaluations on Claimant on January 31, 2012. (R. 480–86). The ALJ performed vocational testing addressing Claimant's mental abilities and her ability to work, and also performed testing to address her physical abilities which measured, among other things, gross upper extremity dexterity, fine hand finger dexterity, gripping and gross handling tasks, pinch gauge, and Claimant's ability to sit, stand, walk, stoop, bend, squat, kneel, crouch, climb, lift, carry, push, and pull. *Id.* The ALJ failed to discuss Carpenter's findings as to physical abilities, however, and only noted Carpenter's ultimate conclusion that Claimant was unable to work, focusing on Carpenter's discussion of Claimant's mental limitations. (R. 793). While Carpenter, a rehabilitation counselor, is not an acceptable medical source whose opinion may be entitled to controlling weight, his opinion must still be considered. *See* 20 C.F.R. § 404.1513(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists); *id.* § 404.1513(d) ("evidence from other sources" may be used "to show the severity of [a claimant's] impairment(s) and how it affects [his] ability to work."); *see also* S.S.R. 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (explaining that opinions from "other

[medical] sources . . . may provide insight into the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to function").[4] While the court does not conclude that this is an independent ground for remand, on remand the ALJ should reconsider Carpenter's opinion as well and provide a more meaningful discussion of the weight afforded to it, particularly the physical limitations included in Carpenter's report.

### iii. *Erin Williamson's Opinion*

Claimant argues that the ALJ failed to properly evaluate the opinion of Erin Williamson ("Williamson"), a nurse practitioner. Pl.'s Mem. [DE-21] at 12. In response, the Commissioner counters that substantial evidence supports the ALJ's consideration of Williamson's opinion. Def.'s Mem. [DE-26] at 10–11.

Williamson completed a two-page questionnaire on November 15, 2011, indicating through check marks that Claimant has chronic low back pain which limits her ability to stand; Claimant could not walk or stand six to eight hours in a work day; he did not know whether Claimant could sit for six to eight hours in a work day; Claimant could not bend two to three hours in a work day; Claimant could not lift 20 pounds for two to three hours in a work day; Claimant's pain prevents her from obtaining restful sleep at night, she suffers from daytime sleepiness, and fatigues easily; Claimant lies down at unpredictable intervals during the day because of sleepiness or pain; and Claimant's sleepiness or pain prevents her from concentrating for two hours at a time. (R. 478–79). The ALJ discussed Williamson's opinion as follows:

> Pursuant to the Court Order, the undersigned has given further consideration to the November 2011 opinion of Erin Williamson, FNP, indicating that the claimant is not capable of performing even a full range of sedentary work (Exhibit 23F). This opinion is given little weight, as it is not well supported by the medical evidence. While there is evidence that . . . Williamson treated the claimant, there

---

[4] Ruling 06-03p was rescinded, effective March 27, 2017, and therefore still applies to this claim. 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

is no evidence that regular physical examinations were performed. In January 2010 and June 2010, the claimant received treatment, but no physical examination was conducted. In May 2010 it was noted that the claimant had no fatigue, and had full range of motion of the neck and a steady gait. In August 2010 the claimant reported hand pain after mowing the grass. In March 2011 . . . Williamson reported worsening pain because she was out of medication. On examination . . . Williamson noted tenderness on palpation of the lumbosacral spine [and g]ait was abnormal and stiff. However, in August 2011, gait and stance were normal although there was some tenderness of the sacrum on palpation. As noted above, [x]-rays of the lumbar spine performed in July 2011 were consistent with mild degenerative disc disease showing only mild lumbar scoliosis with well-maintained vertebral body height and minimal endplate sclerosis (Exhibit 17F). Therefore, the undersigned finds that the medical evidence of record does not support the limitations assessed by . . . Williamson.

(R. 792). The AC expanded upon the ALJ's discussion, stating:

[I]n considering . . . Williamson's opinion, the [ALJ] assigned it "little weight" for the reason that it is not supported by the medical evidence. In support, the decision contains multiple examples with specific citations to the record. Specifically, in physical examinations with . . . Williamson, the claimant was noted to have full range of motion of the spine, steady gait, normal neurological findings, and normal muscle tone (Exhibits 11F, 14F). In March 2011, the claimant had some worsening of her symptoms, but she reported she was out of her medication (Exhibit 15F). In follow-up, the claimant had some tenderness to palpitation of the lumbar spine, but no neurological or other significant deficits (Exhibit 18F).

(R. 498).

As Williamson is a nurse practitioner, he is not an acceptable medical source whose opinion may be afforded controlling weight, but his opinion must still be considered pursuant to the regulations. *See* 20 C.F.R. §§ 404.1513(a), (d); *see also* S.S.R. 06-03p, 2006 WL 2329939, at *2. Here, the ALJ and the AC discounted Williamson's opinion because it was not supported by the record as a whole, specifically citing to the lack of severe symptoms documented in the treatment notes, which reflected Claimant having largely normal findings, and review of these treatment notes demonstrates that they support the agency's findings. The supportability and consistency of a medical opinion are appropriate considerations under the regulations and agency

14

rulings. *See id.* § 404.1527(c) (listing supportability and consistency in a non-exhaustive list of facts to consider in assessing medical opinions); *see also Dunn v. Colvin*, 607 F. App'x 264, 268 (4th Cir. 2015) ("[T]he more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given."). "An ALJ's determination as to the weight assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(d) (1998)." *Dunn*, 607 F. App'x at 267. Accordingly, where the ALJ and the AC appropriately considered the consistency and supportability of Williamson's opinion, this issue provides no basis for remand.

### iv. *Claimant's Remaining Arguments*

Claimant's remaining arguments all relate to the consideration of the medical opinion evidence, where she argues that the ALJ's errors in considering the medical opinion evidence led to a flawed RFC determination; the ALJ failed to assess her credibility properly where he concluded that she improved after surgery, which conflicts with Dr. Huffmon's opinion that her condition has worsened; and the ALJ concluded that she could perform her past relevant work based on an incorrect RFC analysis. Pl.'s Mem. [DE-21] at 7–9, 12–13. Reconsideration of Dr. Huffmon's and Carpenter's opinions will necessarily impact these issues, and they should receive additional consideration on remand, as necessary, in light of the ALJ's further consideration of the opinion evidence. *See Jones v. Astrue*, No. 5:11-CV-206-FL, 2012 WL 3580482, at *8 (E.D.N.C. Apr. 19, 2012) ("Because this court finds that remand on the issue of the treating physician's opinion will affect the remaining issues raised by Claimant, it does not address those arguments."), *adopted by* 2012 WL 3580054 (Aug. 17, 2012).

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-20] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-25] is DENIED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this Order.

So ordered, the 27th day of September 2017.

Robert B. Jones, Jr.
United States Magistrate Judge